# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JIMMY CLAYBORNE, )
)
Plaintiff, )
) No. 06 C 6380
vs. ) Magistrate Judge Schenkier
)
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER[1]

The plaintiff, Jimmy Clayborne, seeks judicial review of a final decision denying his application for disability insurance benefits and supplemental security income under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). On June 2, 2004, Mr. Clayborne filed both a Title II application for a period of disability and disability insurance benefits (Record ("R.") 76-78), as well as a Title XVI application for supplemental security income (R. 162-64). In his applications, Mr. Clayborne alleged an onset date of September 17, 2003 (R. 76). The claims were denied initially and on reconsideration on December 16, 2004 (R. 20, 160). An administrative hearing was held before an Administrative Law Judge (the "ALJ") on January 12, 2006, during which Mr. Clayborne amended his alleged onset date to December 15, 2004 (R. 13, 178-79). Mr. Clayborne then testified regarding his alleged disability (R. 187-215).[2] Mr. Clayborne's claims were denied by written decision of the ALJ on April 10, 2006 (R. 13-19). Mr. Clayborne filed a request for review with the

---

[1] On February 14, 2007, by the parties' consent, the Executive Committee reassigned this case to this Court, pursuant to 28 U.S.C. § 636(c) and Northern District of Illinois Local Rule 73.1(b), to conduct any and all proceedings in this case and to enter final judgment (doc. # 14).

[2] The ALJ stated in her opinion that a vocational expert also testified at Mr. Clayborne's hearing (R. 13). However, the transcript of the proceedings does not support that statement.

Social Security Administration Appeals Council, which ultimately denied his request on September 28, 2006 (R. 4). The ALJ's decision therefore became the final decision of the Commissioner.

Mr. Clayborne filed a timely complaint for administrative review before this Court on November 21, 2006. The parties have filed cross motions for summary judgment: Mr. Clayborne seeks reversal or remand of the Commissioner's decision, and the Commissioner seeks a judgment affirming the decision. For the reasons set forth below, the Court denies the Commissioner's motion for summary judgment (doc. # 24), and it grants Mr. Clayborne's summary judgment motion seeking a remand (doc. # 19).

## I.

We begin with a summary of the relevant evidence in the administrative record. We then summarize the ALJ's opinion.

## A.

Mr. Clayborne was born on May 31, 1961 (R. 76). He is unmarried, has no children, and resides with his mother (R. 76, 197). Mr. Clayborne completed high school and one year of education at the Allied Institute of Technology (R. 119). During the 14 years prior to filing for disability, Mr. Clayborne worked as an auto mechanic for a variety of different establishments (R. 80-81). He was fired by his employer in 2004 and has not been employed since (R. 190-91, 206).

Mr. Clayborne was first diagnosed with diabetes mellitus after being admitted to a hospital in 1999 with an onset of diabetic ketoacidosis (R. 128). As a result of heightened blood sugar levels, Mr. Clayborne testified that, at times, he is prone to dizziness and fainting spells (R. 193). Mr. Clayborne testified that he sometimes took one or two naps a day and that walking two blocks at a

slow pace would sometimes make him tired (R. 196-97). Moreover, Mr. Clayborne testified that the reason he was fired from his job in 2004 was because he could not keep up the pace (R. 191).

Mr. Clayborne also testified that he suffers from pain and swelling in his lower extremities, a condition that is sometimes aggravated by walking or standing (R. 193-95). Mr. Clayborne specifically testified that his legs will become swollen if he remains standing for more than five or ten minutes, and that his legs begin to hurt if he remains standing for longer than 10 or 15 minutes (R. 194-95). Mr. Clayborne also testified that the bottom of his feet were swollen, bruised and lacked feeling (R. 194-95). He testified that his feet hurt even while sitting (R. 194-95), and that he would sometimes have to elevate his feet or soak them for thirty minutes to relieve pain (R. 207-08).

Mr. Clayborne underwent a consultative examination in August 2004. The examining physician, Dr. Raymond, concluded that Mr. Clayborne's diabetes mellitus was diet-controlled at the time (R. 121-24). Dr. Raymond also noted that Mr. Clayborne suffered from foot pain, likely on the basis of bilateral pes planus (R. 124). However, Dr. Raymond concluded the Mr. Clayborne was "able to do tandem gait, hop on one leg an heel and toe walk without difficulty" (R. 123). On the basis of Dr. Raymond's assessment, in September and November 2004, Dr. Francis and Dr. Free, both state agency physicians, concluded that Mr. Clayborne's condition did not constitute a severe impairment (R. 126-27).

In December 2004, Mr. Clayborne's treating physician, Dr. Rathi, diagnosed Mr. Clayborne with uncontrolled diabetes mellitus, neuropathy, and dislipidemia (R. 133). She also noted that Mr. Clayborne had no sensation in his feet during the monofilament foot exam (R. 133). In 2005, Dr. Rathi examined Mr. Clayborne on five separate occasions. During the course of the year, she diagnosed Mr. Clayborne with diabetic nephropathy, microalbuminuria, dyslipidemia, uncontrolled

3

diabetes, and onychomycosis (R. 135, 137, 139, 147).[3] Despite these diagnoses, Dr. Rathi rarely indicated that Mr. Clayborne reported complaints or symptoms (R. 135-37). She expressly noted that Mr. Clayborne complained of dizziness only once in 2005 (R. 137, 139). Dr. Rathi also noted on two separate occasions that Mr. Clayborne reported that he had not been taking three different medications for one to two months (R. 139).

### B.

In her written opinion, the ALJ concluded that Mr. Clayborne was not under a disability within the meaning of the Social Security Act (R. 13). The ALJ found that Mr. Clayborne suffered from diabetes mellitus, plantar fasciitis and neuropathy, which together imposed "significant restrictions on his ability to walk and stand," and which constituted severe impairments (R. 15). At the same time, the ALJ concluded that Mr. Clayborne's conditions did not "meet or equal" one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 15-16). Finding that the evidence did not show that Mr. Clayborne had "sustained disturbance of gait and station," the ALJ concluded that reliance upon the listed impairments would not establish a disability in Mr. Clayborne's case (R. 16).

The ALJ next considered the question of Mr. Clayborne's residual functional capacity ("RFC"). Despite finding that Mr. Clayborne's activity levels were diminished, the ALJ found no evidence of a "relationship between symptoms, impairments and the reduction in activity" (R. 17).

---

[3]The following definitions apply to these terms. *Neuropathy* is a nerve disorder (2 Attorneys Medical Deskbook § 17:14 (4th); *nephropathy* is a kidney abnormality that can be related to diabetes (*Id.*, § 20:8, § 24:27); *microalbuminuria* is minute amounts of albumin in the urine (*Id.*, at § 5:15); *dyslipidemia* is lipid abnormalities; and *onychomycosis* is a nail infection (*Id.*, § 23:5). When diabetes, obesity, hypertension and dyslipidemia exist together, the cluster of disorders is sometimes called "metabolic syndrome." A characteristic of that syndrome is that each disorder will augment the other three, and all four can contribute to cause catastrophic complications such as heart attack and stroke. The presence of metabolic syndrome tends to cause physicians to view the patient's long-term prognosis as poor, irrespective of other circumstances (*Id.*, § 24:4);

4

She discounted the credibility of Mr. Clayborne's testimony that he suffered dizziness, fatigue, and pain in his lower extremities as a result of his diabetes; the ALJ suggested that if Mr. Clayborne were truly as affected as he claimed, he would have reported the afflictions to his treating physician and made "more effort" to take his medication and follow the prescribed meal plan (R. 17). In the end, the ALJ concluded that Mr. Clayborne was unable to perform any past relevant work as a mechanic, but still maintained the RFC to perform a full range of sedentary work (R. 16, 18). In light of Mr. Clayborne's age, education, work experience, and RFC, the ALJ concluded that there are a significant number of jobs in the national economy that Mr. Clayborne could still perform (R. 18). Accordingly, the ALJ concluded that Mr. Clayborne is not disabled.

## II.

To establish a "disability" under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A)(2004). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any work that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A). The social security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 (2004). Under this rule, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is

5

unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court must accept the findings of fact which are supported by "substantial evidence," 42 U.S.C. §§ 405(g) (2004), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

That said, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The

ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron,* 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id. See also Young,* 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter,* 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). This is especially true regarding credibility determinations, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for the credibility finding. *Zurawski,* 245 F.3d at 887. Specific reasons are required so that the reviewing Court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

Moreover, it is firmly established that hearings to determine whether claimants are entitled to disability insurance benefits are not adversary proceedings. *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir. 1981) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)). In accordance with this principle, an ALJ has a basic obligation to develop a full and fair record. *Id.* (citing *Smith v. HEW,* 587 F.2d 857, 860 (7th Cir. 1978); 20 C.F.R. § 404.927). The duty to develop the record is especially critical when the applicant is not represented by counsel; however, the ALJ still bears some responsibility for developing the record even where the applicant has counsel. *Hannum v. Barnhart,* No. 1:04-CV-1445-DFH-TAB, 2005 WL 1799433, *9 (S.D. Ind. July 27, 2005) (citing

*Ray v. Bowen*, 843 F.2d 998, 1006 (7th Cir. 1988) (finding ALJ failed to develop record adequately even where claimant was represented by counsel); *see also, Luna v. Massanari*, No. IP 00-1075-C-T-G, 2001 WL 987860, *5 (S.D. Ind. 2001) (finding the ALJ has a general duty to develop the record whether the claimant appears *pro se* or not).

The ALJ's duty to adequately develop the record arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination. *Hughes v. Apfel*, 992 F. Supp. 243, 246 (W.D.N.Y. 1997) (citing 20 C.F.R. § 404.1512(d-f)). An ALJ is not required to order a consultative examination when there is no objective evidence in the record to support such an examination. *Carroll v. Barnhart*, 291 F.Supp.2d 783, 795 (N.D. Ill. 2003) (citing *Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991)). However, it is reversible error for the ALJ not to order a consultative examination when that evaluation is necessary to make an informed decision. *Haley v. Massanari*, 258 F.3d 742 (8th Cir. 2001); *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1210 (M.D.Ala. 2002).

### III.

Given the facts of this case, we conclude that the ALJ was obligated to further develop the record by ordering a second consultative examination. In so ruling, we recognize that a claimant does not always have an affirmative right to a consultative examination in all circumstances. *See, e.g., Reed v. Massanari*, 270 F.3d 838, 843 (9th Cir. 2001) (finding claimant had no affirmative right to a consultative examination performed by a chosen specialist). However, there are certain situations which "normally require" a consultative examination. *See* 20 C.F.R. §§ 404.1519, 404.1519a(b). A consultative examination will normally be required, for example, if additional evidence not contained in the records of the claimant's medical sources -- such as clinical findings,

8

laboratory tests, diagnosis and prognosis – is needed. *See* 20 C.F.R. §§ 404.1519a(a)(1), (b)(1). A consultative examination may similarly be required if a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, or if there is an indication of a change in the claimant's condition that is likely to affect his or her ability to work when the current severity of the impairment has not yet been established. *See* 20 C.F.R. § 404.1519a(b)(4)-(5).

Applying the standards set forth in these regulations, we conclude that the ALJ was obligated to further develop the record in Mr. Clayborne's case by ordering a new consultative examination. The examination that was performed in August 2004 did not provide the medical evidence necessary to resolve the question of whether Mr. Clayborne's diabetes mellitus constitutes a disability in this case. The August 2004 consultative examination predated the plaintiff's amended onset date of December 15, 2004. Moreover, the findings from that examination – as well as the September and November 2004 opinions of Drs. Francis and Free that relied upon those findings – were explicitly rejected by the ALJ when it found that Mr. Clayborne's impairments were not severe.

To be sure, medical evidence predating a claimant's onset date is not categorically irrelevant to a finding of disability. Particularly in cases where the claimant suffers from degenerative illness, medical evidence that precedes the onset date may be relevant to the determination of disability. *See, e.g., Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) (finding evidence which predated claimant's onset was still relevant in that it might "reinforce or illuminate or fill gaps in the evidence"). However, the probative value of medical evidence prior to the claimant's onset date may be significantly lessened when it is at odds with medical evidence collected after the claimant's onset date. An ALJ should not rely exclusively on evidence predating the alleged onset of the disability as a basis from which to deny benefits, particularly when more recent medical evidence might

9

support a finding of disability. *See Lundgren v. Barnhart*, No. C06-4013-MWB, 2006 WL 2796857, *20 (N.D. Iowa, Sept. 29, 2006) (finding error where the ALJ relied solely on medical opinions based on evidence that predated claimant's amended alleged onset date).

In his August 2004 consultative examination of Mr. Clayborne, Dr. Raymond indicated that Mr. Clayborne suffered from both diet-controlled diabetes mellitus and foot pain resulting from pes planus, known as "flat feet" (R. 125). Relying on this diagnosis, the state agency physicians found Mr. Clayborne's condition to be non-severe (R. 126). However, subsequent to this diagnosis, Mr. Clayborne's treating physician, Dr. Rathi, diagnosed Mr. Clayborne with non-diet controlled diabetes with neuropathy in December 2004. Dr. Rathi also indicated in December 2004 that the results of the monofilament foot exam indicated that Mr. Clayborne lacked sensation in his feet. That diagnosis reflected a change from the condition Dr. Raymond reported, and implicates the ALJ's determination that there was no evidence that Mr. Clayborne had "sustained disturbance or gait and station" (R. 16). In addition, Dr. Rathi's subsequent diagnoses of uncontrolled diabetes, neuropathy, nephropathy, microalbuminuria, dyslipidemia, and onychomycosis (none of which were reported in the August 2004 consultative examination) further tended to indicate that there had been a change in Mr. Clayborne's condition (R. 133). In these circumstances, a second consultative examination should have been ordered under 20 C.F.R. § 404.1519a(b)(5).

Moreover, it was Dr. Rathi's December 2004 diagnosis, which coincided with Mr. Clayborne's amended onset date, that the ALJ found persuasive when she found that the claimant's plantar fasciitis and neuropathy "impose significant restrictions on his ability to walk and stand and, therefore, are severe impairments" (R. 15). By adopting the diagnosis of the treating physician over that of the conclusion of the state agency physicians, the ALJ tacitly acknowledged that the results

of the August 2004 consultative examination were not conclusive with respect to Mr. Clayborne's condition.

Once a claimant has been recommended for a consultative examination, "inconclusive" results are not sufficient to meet the ALJ's duty to develop the record. *See, e.g., Hillard v. Barnhart*, 422 F.Supp.2d 813, 819 (N.D. Cal. 2006). In the Court's view, the results of the first examination were "inconclusive" because they no longer accurately characterized the status and severity of Mr. Clayborne's condition after the amended onset date – a fact that the ALJ made clear by finding, contrary to the state agency physicians' opinions, that Mr. Clayborne had severe impairments. Given that the Social Security Administration deemed a consultative exam to be necessary in the first place, the Court finds that the ALJ was obligated to order a second consultative examination or, at a minimum, explain why such an examination was no longer required. The ALJ failed to supply that explanation. Thus, we conclude that a second consultative examination was required in order to ensure that an informed decision was made. *Haley*, 258 F.3d at 742.

### III.

Even if the ALJ had no obligation under 20 C.F.R. Section 404.1519a to order a second consultative examination, that responsibility was triggered under Step 3 of the sequential analysis. A Step 3 finding requires the ALJ to determine whether a claimant's limitations (which were found severe at Step 2) either meet or equal in severity a listed disability found within 20 C.F.R. Part 404, Appendix 1, Subpart P. *See Young*, 958 F.2d at 389. The question of whether a claimant's impairment equals a listing is a medical judgment; accordingly, an ALJ must consider an expert's opinion on the issue. *Barnett v. Barnhard*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b)). According to SSR 96-6p, an administrative law judge *must* obtain an updated medical

opinion from a medical expert when additional medical evidence is received that, in the opinion of the ALJ, may change the State agency physician's equivalency finding. *See* SSR 96-6p at 4. In this case, Mr. Clayborne submitted supplemental medical evidence which could have changed the earlier conclusions of the state agency physicians. Accordingly, the ALJ was obligated under SSR 96-6p to seek the opinion of a medical expert before ruling on Mr. Clayborne's disability claim.

## IV.

In summary, we conclude that the failure to order a second consultative examination requires a remand in this case. Because the ALJ did not adequately develop the record by ordering a second consultative examination, we remand this case for proceedings consistent with this opinion. On remand, the ALJ should further develop the record to determine the extent and severity of the claimant's impairments. We express no view as to what the ultimate outcome should be on remand. We leave it open for the ALJ to take new evidence and reconsider all aspects of the case. In light of our ruling, the Court expresses no view as to the other arguments Mr. Clayborne has raised.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is denied (doc. # 24) and Mr. Clayborne's motion for summary judgment is granted (doc. # 19). This case is

remanded for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 9, 2007